## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA
*ex rel.* PUBLIX LITIGATION
PARTNERSHIP, LLP, and on behalf of
the STATES of FLORIDA, GEORGIA,
NORTH CAROLINA, TENNESSEE,
and the COMMONWEALTH of VIRGINIA,

      Plaintiff-Relator,

v.                           Case No. 8:22-cv-2361-TPB-AAS

PUBLIX SUPER MARKETS, INC.,

      Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART "PUBLIX SUPER MARKETS, INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT"

This matter is before the Court on Defendant "Publix Super Markets, Inc.'s Motion to Dismiss the Amended Complaint," filed by counsel on November 21, 2024. (Doc. 66). Relator Publix Litigation Partnership, LLP filed a response in opposition on December 12, 2024. (Doc. 70). On December 26, 2024, the United States filed a statement of interest, to which Defendant responded on January 6, 2025. (Docs. 75; 78). On March 25, 2025, the Court held a hearing on the motion. (Doc. 98). After considering the motion, responses, statement of interest, court file, and the record, the Court finds as follows:

## <u>Background</u>[1]

The amended complaint thoroughly details the unfolding opioid crisis in the United States, documenting increasing complications related to prescribed opioids and the rise in prescribed opioid popularity due to drug manufacturers' enhanced marketing campaigns for pain-relieving drugs like oxycodone, hydrocodone, codeine, morphine, and fentanyl.  Indeed, "the opioid epidemic represents one of the largest public health crises in this nation's history."  *Harrington v. Purdue Pharma L. P.*, 603 U.S. 204, 209 (2024).

Defendant Publix Supermarkets, Inc., is a Florida corporation and one of the country's largest retail grocers, with over 1,200 supermarkets located throughout the southeastern United States.  A majority of these locations include an in-store pharmacy, and Defendant is responsible for regularly distributing prescription drugs and other pharmaceuticals, including opiates.

Relator Publix Litigation Partnership, LLP is a Delaware limited liability partnership bringing this action on behalf of the United States and the named states and commonwealth, all of which have declined to intervene in this action but maintain an interest.  Relator is comprised of two partners, Dora Pasztor Hill and Ian Tasman.  Both Hill and Tasman were employed as pharmacists by Defendant

---

[1] The Court accepts as true the facts alleged in the amended complaint for purposes of ruling on the pending motion to dismiss.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").  The Court is not required to accept as true any legal conclusions couched as factual allegations.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

and allegedly have some personal knowledge and experience concerning Defendant's purported illegal conduct and schemes.

In the amended complaint, Relator alleges a corporate-wide scheme by Defendant to knowingly and unlawfully dispense controlled substances and submit reimbursement requests for prescriptions received from government programs like Medicare, Medicaid, and Tricare, which Relator asserts resulted in false claims. Relator asserts that had the Government known that the prescriptions filled by Defendant's pharmacies were improper, it would not have reimbursed Defendant. On October 14, 2022, Relator filed a *qui tam* complaint alleging that Defendant violated the False Claims Act ("FCA") and several state law FCA analogues.[2] (Doc. 1). The United States and named states investigated the allegations but eventually declined to intervene in the action. (Doc. 13). Relator then filed an amended complaint on October 21, 2024, asserting seven claims for relief: violation of the FCA, 31 U.S.C. § 3729(a)(1)(A) (Count I); violation of the FCA, 31 U.S.C. § 3729(a)(1)(B) (Count II); violation of Florida False Claims Act (Count III); violation of Georgia False Medicaid Claims Act (Count IV); violation of North Carolina False Claims Act (Count V); violation of Tennessee Medicaid False Claims Act (Count VI);

---

[2] The FCA has an interesting history. During the height of the Civil War, federal officials had apparently learned that significant funds were being spent on behalf of the Union Army on "decrepit horses and mules, weapons that would not fire, rancid rations, and phantom supplies" purchased from "unscrupulous people [who] viewed the growing federal budget as a font to be plundered." *ACLU v. Holder*, 673 F.3d 245, 247 (4th Cir. 2011). Congress responded to this problem by passing the FCA in 1863, signed by President Lincoln, which would allow both private citizens and the Government to share in the recovery of gains from those dishonest dealers.

violation of Virginia Fraud Against Taxpayers Act (Count VII).  Defendant seeks dismissal of all counts.

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a).  While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face."  *Id.* at 570.

Any claims under the FCA, however, must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *United States ex rel. 84Partners, LLC v. Nuflo, Inc.*, 79 F.4th 1353, 1360 (11th Cir. 2023).  As courts have explained, the purpose of Rule (9)(b) is to ensure that a defendant has sufficient notice and information to formulate a defense.  *See Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1294 (M.D. Fla. 2018).  An FCA claim satisfies Rule 9(b) if it sets forth "'time, place, and substance of the defendant's alleged fraud,' [and] 'the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged

in them." *Olhausen v. Arriva Med., LLC*, 124 F.4th 851, 860 (11th Cir. 2024) (quoting *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005)).

Relator's state-specific claims, Counts III through VII of the amended complaint, are governed by the same analysis as the FCA. *See, e.g., United States v. Choudhry*, 262 F. Supp. 3d 1299, 1311 (M.D. Fla. 2017). The Rule 9(b) pleading requirement "applies with equal force to state law claims," and so Relator must identify specific claims for payment to state government programs. *See United States ex rel. Pepe v. Fresenius Med. Care Holdings*, No. 14-CV-03505 (LDH) (ST), 2024 WL 4635236, at *7 (E.D.N.Y. Oct. 31, 2024).

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995). Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, No. 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

## Analysis

In its motion to dismiss, Defendant argues that: (1) the *qui tam* provision in the FCA is unconstitutional, (2) the amended complaint constitutes a shotgun

pleading, (3) Relator failed to properly plead a corporate-wide scheme to submit false claims, and (4) Relator failed to properly plead materiality.

### *Constitutionality of Qui Tam Provision in the False Claims Act*[3]

Defendant argues that Relator's FCA claims must be dismissed because the FCA's *qui tam* provision is unconstitutional, violating the Appointments Clause, U.S. Const. art. 2, § 2, cl. 2. In so doing, Defendant relies heavily on *United States ex rel. Zafirov v. Florida Medical Associates, LLC*, No. 8:19-cv-01236-KKM-SPF, 2024 WL 4349242 (M.D. Fla. Sept. 30, 2024), in which another judge in this District held that the FCA *qui tam* provision improperly allows relators to "self-appoint as special prosecutors" and therefore permits "unsworn, private actors to exercise core executive power" in violation of the Constitution. *Id.* at *8, 19.

*Zafirov* is currently on appeal, and the Eleventh Circuit has yet to decide the issue. Nonetheless, every federal appellate court to consider it has concluded that the FCA is constitutional. *See United States ex rel. Kelly v. Boeing Co.,* 9 F.3d 743, 751-58 (9th Cir. 1993); *United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.,* 41 F.3d 1032, 1040-42 (6th Cir. 1994); *Riley v. St. Luke's Episcopal Hosp.,* 252 F.3d 749, 753-58 (5th Cir. 2001) (en banc); *United States ex rel. Stone v. Rockwell Int'l Corp.,* 282 F.3d 787, 804-07 (10th Cir. 2002). Other district courts within the Eleventh Circuit have arrived at the same conclusion. *See United States ex rel.*

---

[3] The "United States' Statement of Interest" (Doc. 75) responds exclusively to Defendant's argument that the *qui tam* provision in the FCA is unconstitutional, contending that the provision is consistent with the Constitution and the separation of powers.

*Wallace v. Exactech, Inc.*, 703 F. Supp. 3d 1356, 1363-64 (N.D. Ala. 2023); *United States v. Halifax Hosp. Med. Ctr.*, 997 F. Supp. 2d 1272, 1278 (M.D. Fla. 2014). While this Court may be inclined to agree with certain aspects of the *Zafirov* decision, the overwhelming weight of the law is to the contrary at this time. Consequently, the motion is denied as to this ground.

### *Shotgun Pleading*

Defendant also argues that the amended complaint constitutes a shotgun pleading. A shotgun pleading is one where "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief" and the defendant therefore cannot be "expected to frame a responsive pleading." *Anderson v. Dist. Bd. Of Trustees of Cent. Fla. Cmty. College*, 77 F.3d 364, 366 (11th Cir. 1996). The Eleventh Circuit has identified four primary types of shotgun pleadings, including:

(1)    complaints containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint;

(2)    complaints that do not commit the mortal sin of re-alleging all preceding counts but are guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;

(3)    complaints that commit the sin of not separating into a different count each cause of action or claim for relief; and

(4)    complaints that assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which actions or omissions, or which of the defendants the claim is brought against.

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322-23 (11th Cir. 2015).

Here, Plaintiff's amended complaint contains counts that reallege all prior claims before it, committing the "mortal sin" described in prong one of *Weiland*. *See* 792 F.3d at 1322-23; (Doc. 55 at ¶¶ 428, 431, 435, 440, 445, 450, 455).  On this basis, the amended complaint is dismissed without prejudice, with leave to amend. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (explaining that a district court must generally permit at least one opportunity to amend a shotgun complaint's deficiencies before dismissing the complaint with prejudice).

### *Failure to State a Claim – Submission of False Claims*

Defendant argues that Relator fails to adequately plead a corporate-wide scheme that resulted in the submission of false claims.  "To state a § 3729(a)(1)(A) presentment claim, a complaint must allege (1) a false claim, (2) that the defendant presented, or caused to be presented, for payment or approval, (3) with knowledge that the claim was false."  *United States ex rel. 84Partners, LLC v. Nuflo, Inc.*, 79 F.4th 1353, 1359 (11th Cir. 2023) (citing *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1154 (11th Cir. 2017)).  For § 3279(a)(1)(B), which concerns false statements, "a complaint must allege (1) the defendant made, or caused to be made, a false statement, (2) the defendant knew the statement was false, and (3) the statement was material to a false claim."[4]  *84Partners*, 79 F.4th at

---

[4] Although the elements are slightly different, the Supreme Court has explained that "[a] false claim is essential not only under § 3729(a)(1)(A), which deals directly with false claims, but also under § 3729(a)(1)(B) . . . which deal[s] with false records or statements."

1359. "As this makes clear, an essential element that must be alleged in a False Claims Act complaint is the actual presentment or payment of a false claim. . . . Standing alone, a fraudulent scheme, no matter how egregious, is not enough; there must be an actual false claim." *Id.* at 1360 (internal citations omitted); *see also Vargas v. Lincare, Inc.*, No. 24-11080, 2025 WL 1122196, at *4 (11th Cir. Apr. 16, 2025) ("The FCA targets false claims—not regulatory violations, not internal misconduct, and not abstract theories untethered from government payment.").

In the amended complaint, Relator presents an "implied false certification" theory of liability. The United States Supreme Court has held that an implied false certification theory can – in some narrow circumstances – provide a basis for liability under the False Claims Act. *See Universal Health Servs. v. U.S. ex rel Escobar*, 579 U.S. 176, 186-87 (2016)). Recognizing that a misrepresentation by omission can give rise to liability, the Supreme Court considered whether submitting a claim without disclosing violations of statutory, regulatory, or contractual requirements could constitute an actionable misrepresentation. *See id.* at 188. Ultimately, the Supreme Court concluded that an implied certification theory could be a basis for liability if "two conditions are satisfied: first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Id.* at 190.

---

*See 84Partners*, 79 F.4th at 1360. Therefore, if Relator fails to plead an actual false claim with particularity, both the §§ 3729(a)(1)(A) and (a)(1)(B) claims fail.

In *Escobar*, for instance, the defendant medical facility submitted reimbursement claims that made representations that specific medical services were provided by specific types of licensed professionals but failed to disclose serious violations of regulations pertaining to staff qualifications and licensing requirements. *See id.* at 184-85. More specifically, Massachusetts law required some of the medical facility's personnel to possess certain professional licensing and education credentials, and the relator alleged that an actionable misrepresentation by omission occurred when the medical facility applied for Medicaid reimbursement knowing that certain staff members did not have the necessary credentials. And in *United States ex rel. Campie v. Gilead Sciences., Inc.*, the defendant facility made specific representations about the goods and services provided by listing specific FDA-approved drugs like Truvada and Embriva on its reimbursement request forms although it actually provided its patients with non-FDA approved (and cheaper) equivalents. *See* 862 F.3d 890, 902-03 (9th Cir. 2017).

Therefore, it appears that Relator may proceed on an implied false certification theory, but only in certain limited circumstances which must be carefully evaluated.

<u>Specific Representation about Goods or Services Provided</u>

To adequately plead an FCA claim under an implied false certification theory, it is not enough to just seek reimbursement – rather, Relator must sufficiently allege facts to show that Defendant made a specific false representation to the Government about the goods and services provided.

Here, it is not easy to identify the specific representation in the amended
complaint because the complaint is overly long (exceeding 160 pages) and, frankly, a
bit confusing due to the mixing of factual allegations and purported legal support.
With the benefit of a hearing, the Court has been able to better distill the nature of
the claims.  Relator essentially argues that Defendant dispensed prescriptions that
raised "red flags" without first resolving those red flags (that is, without ensuring
the actual validity of the prescriptions), but it nevertheless represented to the
Government that the prescriptions were for "covered Part D drugs" on the
reimbursement request forms.[5]  A "covered Part D drug" means it is a drug
dispensed upon a valid prescription.  42 C.F.R. § 423.104(h).  In Relator's view,
because Defendant requested payment *even though it did not know* whether certain
prescriptions were valid or invalid due to Publix's failure to review or resolve red
flags, every single reimbursement request pertaining to those prescriptions was
falsely made, regardless of whether the reimbursement request was actually for a
valid prescription made in the ordinary course of practice.

To establish that this representation – that the reimbursement requests were
for a drug covered by Medicare Part D – was false under this legal theory, Relator
must plead with particularity that the reimbursements were not for a covered Part
D drug.  *See United States ex rel. Senters v. Quest Diagnostics, Inc.*, No. 1:10-CV-

---

[5] It is not clear whether this statement refers only to reimbursement requests for drugs
dispensed to Medicare, or if this statement that the drug is a "covered Part D drug" would
also apply to reimbursement requests made to Medicaid and Tricare.  This point should be
clarified in any amended complaint because if there is no specific representation made as to
the Medicaid and Tricare reimbursements, there are no potentially viable false claims as to
reimbursement requests made to those programs.

2202-AT, 2024 WL 4297469, at *4 (N.D. Ga. Aug. 23, 2024) (explaining that for an express certification that a test was medically necessary to have been false, "the tests must *not* have been medically necessary for the health of the patient," – a theory that the medical facility did not know whether the claims it was submitting were medically necessary is not viable). Relator cannot proceed on any alleged false claims based on a theory that Defendant did not know whether the prescription was valid or not because if the prescription was valid, then there is no false certification that caused the Government to make wrongful payments. *See id.* ("At the end of the day, the government would have wrongfully paid out claims if it reimbursed Quest for lab tests that were not 'medically indicated and necessary.' But, if the lab tests *were* medically indicated and necessary, then there is no false certification that caused the government to make wrongful payments."). Instead, Relator would need to plead that the reimbursement requests were made for prescriptions that were not actually valid, and Relator would need to provide representative examples of actual claims submitted by Defendant that were based on invalid prescriptions.

Relator does not do so here. Considering the allegations in the amended complaint, it is not clear whether Relator will be able to make such allegations in good faith, but the Court will permit amendment in an abundance of caution.[6]

---

[6] As discussed more below, the representative examples are lacking. The Court notes that in any amended complaint, Relator will need to include representative examples of prescriptions that Defendant requested reimbursement for even though Defendant actually knew the prescriptions were not valid.

<u>Failure to Disclose Noncompliance with Material Regulatory Requirements</u>

Under an implied certification theory, Relator must also sufficiently allege that the failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes Defendant's misrepresentations misleading half-truths. *See Escobar*, 579 U.S. at 190. Here, Relator alleges that Defendant failed to disclose that it violated 21 C.F.R. § 1306.04(a), which is part of the Controlled Substances Act ("CSA").[7] The regulation reads in part:

> A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, **but a corresponding responsibility rests with the pharmacist who fills the prescription.**

21 C.F.R. § 1306.04(a) (emphasis added). Relator argues that Defendant failed to disclose that it did not perform its corresponding responsibility to dispense only valid prescriptions issued for a legitimate medical purpose, and that this failure resulted in requests for reimbursement for prescriptions that the Government

---

[7] Relator also argues that Defendant violated 21 C.F.R. § 1306.06, which requires that "[a] prescription for a controlled substance may only be filled by a pharmacist, acting in the usual course of his professional practice and either registered individually or employed in a registered pharmacy, a registered central fill pharmacy, or registered institutional practitioner." It does not appear that Relator's theory of liability – that Defendant filled prescriptions without resolving one or more red flags indicating that such prescriptions were not for a legitimate medical purpose or written in the usual course of professional treatment – supports a violation of this section of the CSA. *See United States v. Ridley's Fam. Markets, Inc.*, No. 1:20-CV-173-TS-JCB, 2021 WL 2322478, at *4 (D. Utah June 7, 2021). It therefore does not appear that there can be any alleged false claim based on the alleged failure to disclose noncompliance with a material regulatory requirement under these facts because this alleged conduct would not constitute a regulatory violation under the CSA.

would not have otherwise paid had the Government known of Defendant's omissions.

While the regulation itself does not enumerate any specific duties or obligations connected to the pharmacies' corresponding responsibility, "[f]ederal agencies exercise broad discretion to carry out their statutory mandate through adjudication and to announce policies or principles that may affect non-parties." *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 3917575 (N.D. Ohio Aug. 19, 2019) (citing *Citizens for Responsibility & Ethics in Washington v. FEC*, 164 F. Supp.3d 113, 118-19 (D.C. Cir. 2015)). Though the Court accepts the state of the law as it currently stands, it is worth noting that "[a]gency lawmaking through adjudication raises constitutional questions serious enough at least to warrant a strong presumption against such authority rather than . . . a presumption in its favor." *See* Gary S. Lawson & Joseph Postell, *Against the Chenery II "Doctrine"*, 99 Notre Dame L. Rev. 47, 48 (2023). Indeed, using adjudication instead of notice-and-comment rulemaking very well may "violate[] core principles of both due process of law and subdelegation." *Id.* at 50.

In any event, the Drug Enforcement Administration – the lead federal agency responsible for regulating and enforcing the CSA − has likened the corresponding responsibility to an obligation to avoid willful blindness. *See, e.g., Suntree Pharmacy and Suntree Medical Equipment, LLC*, 85 FR 73753-01,73769 ("[The] DEA has also consistently interpreted the corresponding responsibility regulation such that '[w]hen prescriptions are clearly not issued for legitimate medical

purposes, a pharmacist may not intentionally close his eyes and thereby avoid [actual] knowledge of the real purpose of the prescription.'") (citation omitted).  And at least one court has laid out some specific obligations required to fulfill a corporate pharmacy's corresponding responsibility.[8]

Relator urges that the corresponding responsibility requires corporate pharmacies to ensure the validity of prescriptions by employing various procedures and policies to detect and resolve "red flags" raised by some prescriptions.[9] However, notwithstanding the pharmacies' responsibility, the Court is cognizant of the fact that "[l]iability under the False Claims Act arises from the submission of a fraudulent claim to the government, not the disregard of government regulations or failure to maintain proper internal policies."  *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

If Relator chooses to file an amended complaint, Relator should point to specific obligations Defendant has under its corresponding responsibility, the source of those obligations, and how those obligations tie into specific misrepresentations

---

[8] "At a minimum, a corporation that employs pharmacists has the legal duty to: (1) establish corporate procedures and policies that recognize the 'corresponding responsibility' of its pharmacists and require its pharmacists to adhere to it; (2) supply its pharmacists with the tools necessary to enable them to perform their 'corresponding responsibility;' and (3) develop and utilize a system for monitoring the compliance of its pharmacists with their legal duties." *In re Nat'l Prescription Opiate Litigation*, 589 F. Supp. 3d 790, 818 (N.D. Ohio 2022).

[9] In Relator's view, these procedures and policies include: (1) training its pharmacists or providing them tools to identify red flags; (2) requiring its pharmacists to consult prescription drug monitoring program databases to reduce dispensing of illegitimate prescriptions; (3) requiring its pharmacists to document due diligence identifying and resolving red flag prescriptions; (4) maintaining accurate prescription records regarding opioid dispensing; (5) accurately reporting its noncompliance with the CSA; (6) utilizing its own data to identify red flag prescriptions.

made by Defendant to the Government in the course of seeking reimbursement for prescriptions dispensed at its pharmacies.

### *Failure to State a Claim - Materiality*

Defendant additionally argues that even if Relator could adequately plead an FCA claim, such noncompliance was immaterial to the Government's decision to reimburse it.  The materiality requirement is an essential part of an FCA claim that ensures a defendant's noncompliance was "capable of influencing" or had a "natural tendency to influence" the payment of money by the Government.  31 U.S.C. § 3729(b)(4).  The standard is "demanding" because the FCA is not "an all-purpose antifraud statute."  *Escobar*, 579 U.S. at 194 (citation omitted).  "While no single factor is dispositive, some factors that are relevant to the materiality analysis include: (1) whether the requirement is a condition of the government's payment, (2) whether the misrepresentations went to the essence of the bargain with the government, and (3) to the extent the government had actual knowledge of the misrepresentations, the effect on the government's behavior."  *United States ex rel. v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1347 (11th Cir. 2021).

Because Relator has failed to plead an adequate misrepresentation as discussed above, it fails to adequately plead materiality.  But Relator will have the opportunity to amend.

### *Representative Examples*

As noted above, an FCA complaint satisfies Rule 9(b) if it sets forth the "'time, place, and substance of the defendant's alleged fraud,' [and] 'the details of

the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Olhausen*, 124 F.4th at 860 (citations omitted).  Accordingly, to meet "Rule 9's heightened pleading standard to show submission of a false claim," a relator can use "one of two approaches."  *United States v. Wood*, No. CV 123-158, 2024 WL 3742713, at *6 (S.D. Ga. Aug. 9, 2024).  First, a relator can point to specific billing information, such as the dates, times, and amounts of money requested which pertain to the false claims submitted to the government.  *See id.*  Alternatively, a relator can allege direct knowledge of false claims "based on [the relator's] own experiences and on information [they] learned in the course of [their] employment." *United States ex rel. Chase v. HPC Healthcare, Inc.*, 723 F. App'x 783 (11th Cir. 2018)); *see also United States ex rel. Aquino v. Univ. of Mia.*, 250 F. Supp. 3d 1319, 1332 (S.D. Fla. 2017) ("[A] relator's firsthand knowledge of a defendant's actual submission of false claims may, where supported by appropriate factual allegations, provide 'sufficient indicia of reliability' to substitute for the particularized allegations that Rule 9(b) generally requires.").  Nevertheless, "[w]hether an allegation is reliable depends on context."  *Vargas*, 2025 WL 1122196, at *4.

Here, Relator indicates that its constituent partners "have direct knowledge of the conduct alleged in this Amended Complaint" because they have "observed numerous instances of illegal conduct by Publix" and otherwise learned from the experiences of others in the course of counsel's interviews with 21 additional Publix pharmacists.  But critically, Relator fails to allege "direct knowledge of [Defendant's] submission of false claims."  *See Chase*, 723 F. App'x at 789.

Generalized knowledge of noncompliance with various regulations or policies does not suffice, and the partners comprising the Relator entity do not allege to have personal knowledge of the representative examples of submitted claims. They did not review and fill any of those prescriptions, nor do they allege to have taken part in billing and processing for those claims or any other allegedly fraudulent claims. *See Atkins*, 470 F. 3d at 1359 (explaining that complaint failed because relator, a psychiatrist, identified patients and procedures he thought should not be reimbursable without alleging personal knowledge of the claims submitted or involvement with billing the claims). Moreover, to the extent the partners' direct knowledge hinges on investigative interviews conducted by counsel, that knowledge is simply not "based on [the partners'] own experiences and on information [they] learned in the course of [their] employment" – it is based on the experience of others learned subsequent to the partners' time of employment. *Id.*

Notwithstanding the partners' knowledge or lack thereof, the representative examples offered are insufficient in their own right. Despite years of investigation and amassing significant data from related multi-district litigation that resulted in the production of over 1,200 prescriptions in its various attachments to the amended complaint, Relator does not show one exemplar prescription that was submitted to the government, let alone with the specificity demanded by Rule 9(b). The representative examples mostly consist of a list of patients that received prescriptions for opiates at Publix pharmacies. Relator does not allege that any of the listed prescriptions were actually invalid. Relator does not provide health

information of the patients that would permit any sort of evaluation as to whether these prescriptions were valid or issued in the usual course of practice.[10] Significantly, Relator does not even allege that inadequate steps were taken by Publix when investigating (or failing to investigate) these particular prescriptions. In its examples, Relator simply alleges that Publix pharmacists filled opiate prescriptions – this type of allegation does not support any inference that a false claim was presented to the Government.

By failing to specifically identify any reimbursement requests submitted to the Government for prescriptions that Defendant knew to be invalid, Relator fails to provide any sufficient representative example to support its claims.  Instead, Relator asks the Court to take an "inferential leap" and assume false claims probably resulted from allegedly improper practices.  This is not enough.  *See Vargas*, No. 24-11080, 2025 WL 1122196, at *7; *see also Atkins*, 470 F.3d at 1359. Because the Court is permitting amendment, Relator will have the opportunity to cure these deficiencies, if it may do so in good faith.

---

[10] At least one court has concluded that such individualized health information would be required to state a facially sufficient claim.  *See United States v. Wal-Mart Stores E., LP*, 858 F. App'x 876, 879 (6th Cir. 2021).  In *Wal-Mart*, the Sixth Circuit also explained that summaries of exhibits identifying payments and prescriptions were insufficient to demonstrate FCA liability, even when paired with specific adverse facts about a prescribing doctor.  *See id.* at 877; *see also Medicare Program; Contract Year 2015 Policy and Technical Changes to the Medicare Advantage and the Medicare Prescription Drug Benefit Programs*, 79 Fed. Reg. 29,844, 29,902 (May 23, 2014) (response to comment) ("[T]he sole use of [Part D] data to identify prescriber trends is insufficient to determine abusive practices, for such data cannot distinguish between: (1) legitimate high dose and frequency of prescriptions; and (2) illegitimate prescribing.").

## Conclusion

The motion to dismiss is denied to the extent that Defendant argues the *qui tam* provision of the FCA is unconstitutional.  The motion is granted to the extent Defendant argues that the amended complaint is a shotgun pleading and fails to state a claim upon which relief may be granted.[11]

The Court also notes that should Relator choose to file a second amended complaint, it should prioritize brevity and clarity concerning its factual allegations. The amended complaint spans over 160 pages – much of it filled with background information and legal conclusions that have very little or nothing to do with Relator's specific claims for relief under the FCA or state-equivalents – and the complaint is littered with distracting legal citations that only muddy the waters further.  The Court is mindful of the fact that this is a complex case but reminds Relator that this only amplifies the need for precision, not wordiness.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. Defendant "Publix Super Markets, Inc.'s Motion to Dismiss the Amended Complaint" (Doc. 66) is **GRANTED IN PART** and **DENIED IN PART,** as set forth herein.

---

[11] Relator's state-specific claims, Counts III through VII of the amended complaint, are also dismissed for failure to state a claim, as those counts are governed by the same analysis as the FCA.  *See Choudhry*, 262 F. Supp. 3d at 1311.

2. The amended complaint (Doc. 55) is **DISMISSED WITHOUT PREJUDICE**, with leave to amend to cure the defects identified in this Order.

3. The motion is otherwise **DENIED**.

4. Relator Publix Litigation Partnership, LLP is directed to file an amended complaint on or before May 27, 2025.  Failure to file an amended complaint as directed will result in this Order becoming a final judgment. *See Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 719-20 (11th Cir. 2020).

    **DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>13th</u> day of May, 2025.

                                       TOM BARBER
                                       UNITED STATES DISTRICT JUDGE