# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA
*ex rel.* PUBLIX LITIGATION
PARTNERSHIP, LLP, and on behalf of
the STATES of FLORIDA, GEORGIA,
NORTH CAROLINA, TENNESSEE,
and the COMMONWEALTH of VIRGINIA,

     Plaintiff-Relator,

v.                                                            Case No. 8:22-cv-2361-TPB-AAS

PUBLIX SUPER MARKETS, INC.,

     Defendant.

_____/

## ORDER GRANTING "PUBLIX SUPER MARKETS, INC.'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW"

This matter is before the Court on Defendant "Publix Super Markets, Inc.'s Motion to Dismiss and Incorporated Memorandum of Law," filed by counsel on June 17, 2025. (Doc. 124). Relator Publix Litigation Partnership, LLP filed a response in opposition on July 8, 2025. (Doc. 128). After considering the motion, response, court file, and the record, the Court finds as follows:

## Background

The second amended complaint thoroughly details the recent opioid crisis in the United States, documenting increasing complications related to prescribed opioids and the rise in prescribed opioid popularity due to drug manufacturers' enhanced marketing campaigns for pain-relieving drugs like oxycodone, hydrocodone, codeine, morphine, and fentanyl. Indeed, the United States Supreme

Court has recognized that "the opioid epidemic represents one of the largest public
health crises in this nation's history." *Harrington v. Purdue Pharma L. P.*, 603 U.S.
204, 209 (2024).

Defendant Publix Supermarkets, Inc. is a Florida corporation and one of the
country's largest retail grocers, with over 1,200 supermarkets located throughout
the southeastern United States.  A majority of these locations include an in-store
pharmacy, and Defendant is responsible for regularly distributing prescription
drugs and other pharmaceuticals, including opiates.

Relator Publix Litigation Partnership, LLP is a Delaware limited liability
partnership bringing this action on behalf of the United States and the named
states, all of which have declined to intervene in this action but maintain an
interest.  Relator is comprised of two partners, Dora Pasztor Hill and Ian Tasman.
Both Hill and Tasman were employed as pharmacists by Defendant and allegedly
have some personal knowledge and experience concerning Defendant's purported
illegal conduct and schemes.  It appears that Relator Publix Litigation Partnership,
LLP was formed for the specific purpose of pursuing this litigation and likely has no
other purpose or function.

In the second amended complaint, Relator alleges a corporate-wide scheme by
Defendant to knowingly and unlawfully dispense controlled substances and submit
reimbursement requests for prescriptions received from government programs like
Medicare, Medicaid, and Tricare, which Relator asserts resulted in false claims.
Relator asserts that had the Government known that the prescriptions filled by

Defendant's pharmacies were improper, it would not have reimbursed Defendant.

On October 14, 2022, Relator filed a *qui tam* complaint alleging that Defendant

violated the False Claims Act ("FCA") and several state law FCA analogues.[1]  (Doc.

1).  The United States and named states investigated the allegations but eventually

declined to intervene in the action.  (Doc. 13).  Relator then filed an amended

complaint on October 21, 2024, asserting seven claims for relief: violation of the

FCA, 31 U.S.C. § 3729(a)(1)(A) (Count I); violation of the FCA, 31 U.S.C. §

3729(a)(1)(B) (Count II); violation of Florida False Claims Act (Count III); violation

of Georgia False Medicaid Claims Act (Count IV); violation of North Carolina False

Claims Act (Count V); violation of Tennessee Medicaid False Claims Act (Count VI);

violation of Virginia Fraud Against Taxpayers Act (Count VII).

Defendant filed a motion to dismiss the amended complaint, which the Court

granted, with leave to amend.  *See* (Docs. 66; 115).  In the instant motion,

Defendant again seeks dismissal of all counts.

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a

short and plain statement of the claim showing that the [plaintiff] is entitled to

relief."  Fed. R. Civ. P. 8(a).  While Rule 8(a) does not demand "detailed factual

---

[1] The FCA has a fascinating history.  During the height of the Civil War federal officials
learned that significant funds were being spent on behalf of the Union Army for "decrepit
horses and mules, weapons that would not fire, rancid rations, and phantom supplies"
purchased from "unscrupulous people [who] viewed the growing federal budget as a font to
be plundered." *ACLU v. Holder*, 673 F.3d 245, 247 (4th Cir. 2011).  This law, passed by
Congress and signed by President Lincoln in 1863, allowed both private citizens and the
Government to share in any recoveries from dishonest dealers.

allegations," it does require "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007).  In order to survive a motion to dismiss, factual

allegations must be sufficient "to state a claim to relief that is plausible on its

face." *Id.* at 570.

Any claims under the FCA, however, must meet the heightened pleading

standard of Federal Rule of Civil Procedure 9(b), which requires a party alleging

fraud or mistake to "state with particularity the circumstances constituting fraud or

mistake." Fed. R. Civ. P. 9(b); *United States ex rel. 84Partners, LLC v. Nuflo, Inc.*,

79 F.4th 1353, 1360 (11th Cir. 2023).  As courts have explained, the purpose of Rule

(9)(b) is to ensure that a defendant has sufficient notice and information to

formulate a defense. *See Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F.

Supp. 3d 1285, 1294 (M.D. Fla. 2018).  An FCA claim satisfies Rule 9(b) if it sets

forth "'time, place, and substance of the defendant's alleged fraud,' [and] 'the details

of the defendants' allegedly fraudulent acts, when they occurred, and who engaged

in them." *Olhausen v. Arriva Med., LLC*, 124 F.4th 851, 860 (11th Cir. 2024)

(quoting *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005)).

Relator's state-specific claims, Counts III through VII of the amended

complaint, are governed by the same analysis as the FCA. *See, e.g., United States v.*

*Choudhry*, 262 F. Supp. 3d 1299, 1311 (M.D. Fla. 2017).  The Rule 9(b) pleading

requirement "applies with equal force to state law claims," and so Relator must

identify specific claims for payment to state government programs. *See United*

*States ex rel. Pepe v. Fresenius Med. Care Holdings*, No. 14-CV-03505 (LDH) (ST),

2024 WL 4635236, at *7 (E.D.N.Y. Oct. 31, 2024).

When deciding a Rule 12(b)(6) motion, review is generally limited to the four

corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233

(M.D. Fla. 1995). Furthermore, when reviewing a complaint for facial sufficiency, a

court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the

[c]omplaint in the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v.

Rhodes*, 416 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the

complaint's legal sufficiency, and is not a procedure for resolving factual questions

or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic

Fertilizer, LLC*, No. 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla.

Oct. 9, 2009) (Lazzara, J.).

A district court must generally permit a plaintiff at least one opportunity to

amend a complaint's deficiencies before dismissing the complaint with prejudice.

*Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). "Implicit in

such a repleading order is the notion that if the plaintiff fails to comply with the

court's order – by filing a repleader with the same deficiency – the court should

strike his pleading or, depending on the circumstances, dismiss his case and

consider the imposition of monetary sanctions." *Jackson v. Bank of America, N.A.*,

898 F.3d 1348, 1358 (11th Cir. 2018) (internal quotations and citation omitted).

Here, Relator was given an opportunity to file a second amended complaint after

the Court entered a detailed order on May 13, 2025, that discussed many of the

same points that will be discussed below. (Doc. 115).

**<u>Analysis</u>**

In its latest motion to dismiss, Defendant argues that: (1) the *qui tam*

provision in the FCA is unconstitutional, (2) the second amended complaint

constitutes a shotgun pleading, and (3) Relator failed to properly plead a corporate-

wide scheme to submit false claims.  These same arguments were previously

addressed in the Court's Order entered on May 13, 2025.

***Constitutionality of Qui Tam Provision***

The request to dismiss this case based on the constitutionality of the *qui tam*

provision in the FCA is again denied.  While the Court reiterates it may be inclined

to agree with certain aspects of *United States ex rel. Zafirov v. Florida Medical*

*Associates, LLC*, No. 8:19-cv-01236-KKM-SPF, 2024 WL 4349242 (M.D. Fla. Sept.

30, 2024), the weight of the law is to the contrary at this time.  This ground for

dismissal is denied.

***Shotgun Pleading***

To the extent Defendant argues that the second amended complaint

constitutes a shotgun pleading, the motion is denied.  As previously discussed in the

Court's prior Order granting relief on this point, the amended complaint committed

the "mortal sin" of "adopt[ing] the allegations of preceding counts, causing each

successive count to carry all that came before . . . ."  *See Weiland v. Palm Beach*

*Cnty. Sheriff's Office*, 792 F.3d 1313, 1322-23 (11th Cir. 2015).  Though the second

amended complaint remains long and winding, the defect regarding incorporation of counts and allegations has been cured, and the second amended complaint provides Defendant with sufficient notice of the nature of the claims brought by Relator and the general grounds on which they rest.

*Failure to State a Claim*

Defendant maintains the second amended complaint must be dismissed because it fails to adequately plead a viable corporate-wide FCA claim against Defendant; Relator cannot maintain a theory of falsity based on "red flags" alone; Relator fails to properly allege noncompliance with material regulatory requirements; and Relator's representative examples do not comport with the specificity demanded by Rule 9(b).  The Court agrees.

"To state a § 3729(a)(1)(A) presentment claim, a complaint must allege (1) a false claim, (2) that the defendant presented, or caused to be presented, for payment or approval, (3) with knowledge that the claim was false."  *United States ex rel. 84Partners, LLC v. Nuflo, Inc.*, 79 F.4th 1353, 1359 (11th Cir. 2023) (citing *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1154 (11th Cir. 2017)). For § 3279(a)(1)(B), which concerns false statements, "a complaint must allege (1) the defendant made, or caused to be made, a false statement, (2) the defendant knew the statement was false, and (3) the statement was material to a false claim." *84Partners,* 79 F.4th at 1359.[2]   "As this makes clear, an essential element that

---

[2] Although the elements are slightly different, the Supreme Court has explained that "[a] false claim is essential not only under § 3729(a)(1)(A), which deals directly with false claims, but also under § 3729(a)(1)(B) . . . which deal[s] with false records or statements."

must be alleged in a False Claims Act complaint is the actual presentment or

payment of a false claim. . . . Standing alone, a fraudulent scheme, no matter how

egregious, is not enough; there must be an actual false claim." *Id.* at 1360 (internal

citations omitted); *see also Vargas v. Lincare, Inc.*, No. 24-11080, 2025 WL 1122196,

at *4 (11th Cir. Apr. 16, 2025) ("The FCA targets false claims—not regulatory

violations, not internal misconduct, and not abstract theories untethered from

government payment.").

It is very important to note that throughout the second amended complaint,

Relator proceeds on the same "implied false certification theory" as before, relying

on Defendant's alleged *lack of knowledge* concerning the validity of prescriptions

rather than the submission of actual false claims.

Implied False Certification Liability

The United States Supreme Court has held that a theory based on "implied

false certification" can – in some narrow circumstances – provide a basis for liability

under the False Claims Act.  *See Universal Health Servs. v. U.S. ex rel Escobar*, 579

U.S. 176, 186-87 (2016).  Specifically, the Supreme Court explained that such a

theory could be a basis for liability only if "two conditions are satisfied: first, the

claim does not merely request payment, but also makes specific representations

about the goods or services provided; and second, the defendant's failure to disclose

noncompliance with material statutory, regulatory, or contractual requirements

makes those representations misleading half-truths." *Id.* at 190.  Accordingly, to

---

*See 84Partners*, 79 F.4th at 1360.  Therefore, if Relator fails to plead an actual false claim
with particularity, both the §§ 3729(a)(1)(A) and (a)(1)(B) claims fail.

adequately plead an FCA claim under an implied false certification theory, it is not enough to just seek reimbursement – rather, Relator must sufficiently allege facts to show that Defendant made a specific false representation to the Government about the goods and services provided.  Whether Relator's allegations on this point are sufficient to state a claim is perhaps the core issue in this case.

Relator again argues that Defendant dispensed prescriptions that raised "red flags" without first resolving those red flags (that is, without ensuring the actual validity of the prescriptions), but nevertheless represented to the Government that the prescriptions were for "covered Part D drugs" on the reimbursement request forms.[3]  In Relator's view, because Defendant requested payment *even though it did not know* whether certain prescriptions were valid or invalid due to Defendant's failure to review or resolve red flags, every single reimbursement request pertaining to those prescriptions was falsely made, regardless of whether the reimbursement request was actually for a valid prescription made in the ordinary course of practice.

The Court is not persuaded that this theory of recovery is adequate under existing law, at least with regard to the allegations presented here.  To establish that a certain representation – that the reimbursement requests were for a drug covered by Medicare Part D – was false under this legal theory, Relator must plead with particularity that the reimbursements were not for a covered Part D drug. *See Vargas,* 2025 WL 1122196, at \*4; *see also United States ex rel. Senters v. Quest Diagnostics, Inc.*, No. 1:10-CV 2202-AT, 2024 WL 4297469, at \*4 (N.D. Ga. Aug. 23,

---

[3] A "covered Part D drug" means it is a drug dispensed upon a valid prescription. 42 C.F.R. § 423.104(h).

2024) (explaining that for an express certification that a test was medically necessary to have been false, "the tests must not have been medically necessary for the health of the patient" – a theory that the medical facility did not know whether the claims it was submitting were medically necessary is not viable). As the Court previously noted in its prior Order, Relator would need to plead that the reimbursement requests were made for prescriptions that were not actually valid, and Relator would need to provide representative examples of actual claims submitted by Defendant that were based on invalid prescriptions. Relator has not done so.[4]

Furthermore, to the extent Relator's theory of falsity relies on Defendant's "corresponding responsibility" to dispense only valid prescriptions, Relator would need to specify "the source of those [corresponding responsibility] obligations" and how they "tie into specific representations made by Defendant to the Government in the course of seeking reimbursement for prescriptions dispensed at its pharmacies." (Doc. 115 at 15-16). This insufficiency was outlined in the Court's prior Order, but Relator has not adequately addressed it in its second amended complaint.

---

[4] While Relator relies heavily on *United States v. AseraCare, Inc.*, 938 F.3d 1278 (11th Cir. 2019), that case is legally and factually distinguishable. *AseraCare* merely recognized that falsity can stem from either a doctor's actual clinical judgment or a statement that a clinical judgment has been properly made. *Id.* at 1296. Submitted claims must nevertheless correlate to an "objective falsehood." *See id.* at 1296-97 ("A claim cannot be 'false'—and thus cannot trigger FCA liability—if the underlying clinical judgment does not reflect an objective falsehood."). Here, Relator does not allege with specificity why certain red flag prescriptions are objectively false; instead, without providing any individualized assessment of the prescriptions, Relator asks the Court to assume their falsity.

Instead, Relator again alleges that Defendant failed to disclose that it

violated 21 C.F.R. § 1306.04(a), which is part of the Controlled Substances Act

("CSA").[5]  The regulation reads in part:

> A prescription for a controlled substance to be effective must be issued
> for a legitimate medical purpose by an individual practitioner acting in
> the usual course of his professional practice. The responsibility for the
> proper prescribing and dispensing of controlled substances is upon the
> prescribing practitioner, **but a corresponding responsibility rests
> with the pharmacist who fills the prescription.**

21 C.F.R. § 1306.04(a) (emphasis added).  Relator maintains it can state a claim

because Defendant failed to disclose that it did not perform its corresponding

responsibility to dispense only valid prescriptions issued for a legitimate medical

purpose, and that this failure resulted in requests for reimbursement for

prescriptions that the Government would not have otherwise paid had the

Government known of Defendant's omissions.

Relator points out that while the regulation itself does not enumerate any

specific duties or obligations connected to the pharmacies' corresponding

responsibility, "[f]ederal agencies exercise broad discretion to carry out their

---

[5] Relator also argues that Defendant violated 21 C.F.R. § 1306.06, which requires that "[a] prescription for a controlled substance may only be filled by a pharmacist, acting in the usual course of his professional practice and either registered individually or employed in a registered pharmacy, a registered central fill pharmacy, or registered institutional practitioner."  It does not appear that Relator's theory of liability – that Defendant filled prescriptions without resolving one or more red flags indicating that such prescriptions were not for a legitimate medical purpose or written in the usual course of professional treatment – supports a violation of this section of the CSA.  *See United States v. Ridley's Fam. Markets, Inc.*, No. 1:20-CV-173-TS-JCB, 2021 WL 2322478, at *4 (D. Utah June 7, 2021).  It therefore does not appear that there can be any alleged false claim based on the alleged failure to disclose noncompliance with a material regulatory requirement under these facts because this alleged conduct would not constitute a regulatory violation under the CSA.

statutory mandate through adjudication and to announce policies or principles that

may affect non-parties." *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804,

2019 WL 3917575, at \*9 (N.D. Ohio Aug. 19, 2019) (citing *Citizens for Responsibility*

*& Ethics in Washington v. FEC*, 164 F. Supp.3d 113, 118-19 (D.C. Cir. 2015)).  This

accurately describes the present state of the law on this point.  However, the Court

notes that commentators have recognized that "[a]gency lawmaking through

adjudication raises constitutional questions serious enough at least to warrant a

strong presumption against such authority rather than . . . a presumption in its

favor."  *See* Gary S. Lawson & Joseph Postell, *Against the Chenery II "Doctrine",* 99

Notre Dame L. Rev. 47, 48 (2023).  Indeed, using adjudication instead of notice-and-

comment rulemaking very well may "violate[] core principles of both due process of

law and subdelegation."  *Id.* at 50.  But in any event, administrative rulemaking

through adjudication is presently permissible.

The Drug Enforcement Administration – the lead federal agency responsible

for regulating and enforcing the CSA – has likened the corresponding responsibility

to an obligation to avoid willful blindness.  *See, e.g., Suntree Pharmacy and Suntree*

*Medical Equipment, LLC*, 85 FR 73753-01,73769 ("[The] DEA has also consistently

interpreted the corresponding responsibility regulation such that '[w]hen

prescriptions are clearly not issued for legitimate medical purposes, a pharmacist

may not intentionally close his eyes and thereby avoid [actual] knowledge of the

real purpose of the prescription.'") (citation omitted).  And at least one court has laid

out some specific obligations required to fulfill a corporate pharmacy's

corresponding responsibility.[6]

However, as noted above, the Court's prior Order specifically directed Relator

to identify "the source of those [corresponding responsibility] obligations" and

explain how they "tie into specific representations made by Defendant to the

Government in the course of seeking reimbursement for prescriptions dispensed at

its pharmacies." (Doc. 115 at 15-16). The Court agrees with Defendant that the

second amended complaint largely follows the same reasoning as before and focuses

principally on Defendant's alleged lack of due diligence. But falsity is the

touchstone for FCA claims, and generalized theories related to Defendant's

purported bad practices will not suffice. *See Vargas*, 2025 WL 1122196, at *4.

Representative Examples

Relator also fails to resolve the issues with its representative examples

discussed in the Court's prior Order. While Relator offers examples of opioid

prescriptions that Publix pharmacists filled, Relator does not actually provide any

representative examples of *false claims that were submitted to federal government*

*programs such as Medicare, Medicaid, or Tricare*. To be clear, although Relator is

required to identify representative examples with specificity under Rule 9(b),

---

[6] "At a minimum, a corporation that employs pharmacists has the legal duty to: (1)
establish corporate procedures and policies that recognize the 'corresponding responsibility'
of its pharmacists and require its pharmacists to adhere to it; (2) supply its pharmacists
with the tools necessary to enable them to perform their 'corresponding responsibility;' and
(3) develop and utilize a system for monitoring the compliance of its pharmacists with their
legal duties." *In re Nat'l Prescription Opiate Litigation*, 589 F. Supp. 3d 790, 818 (N.D.
Ohio 2022).

Relator fails to specifically identify *any* facially invalid prescriptions, and Relator

does not sufficiently allege *any* information as to specific reimbursement claims or

prescriptions that the Court could rely on to determine that some of the opioid

prescriptions listed could be actual false claims.  Relator simply assumes that

hundreds of thousands of opioid prescriptions dispensed by Defendant are invalid

based on what it believes to be red flags, and that no opioid prescription with a red

flag should have been dispensed – period.[7]  For Relator, simply having a red flag is

enough to be a false claim, but that clearly cannot be the case.

Moreover, Relator's allegations, based on the experiences of its partners

working as pharmacists in Defendant's stores, do not show that Defendant actually

knew about the submission of false claims.  Generalized knowledge of

noncompliance with various regulations or policies does not suffice, and the

partners comprising the Relator entity do not allege to have personal knowledge of

the representative examples of submitted claims.  They did not review and fill any

of those prescriptions, nor do they allege to have taken part in billing and

processing for those claims or any other allegedly fraudulent claims.  *See United

States ex rel. Atkins v. McInteer*, 470 F. 3d 1350, 1359 (11th Cir. 2006) (explaining

that complaint failed because the relator, a psychiatrist, identified patients and

procedures he thought should not be reimbursable without alleging personal

knowledge of the claims submitted or involvement with billing the claims).

---

[7] As to its representative examples, Relator does not address whether any investigation of
red flags actually did or did not occur.  Instead, Relator makes an inferential leap to allege
that had an investigation occurred, the prescription would not have been filled.

Furthermore, to the extent the partners' direct knowledge hinges on investigative interviews conducted by counsel, that knowledge is simply not "based on [the partners'] own experiences and on information [they] learned in the course of [their] employment" – it is based on the experience of others learned subsequent to the partners' time of employment. *See id.*

In sum, the second amended complaint rests on a nonviable legal theory and fails to cure many key defects previously identified by the Court. If the allegations of the second amended complaint are true, Defendant may certainly have been engaging in bad business practices and procedures that might support a negligence theory, nuisance theory, or even violations of the Controlled Substances Act. But that does not mean that the allegations support a claim under the False Claims Act, and the Court is not permitted to make an "inferential leap" and assume false claims probably resulted from questionable practices. Significantly, Relator fails to sufficiently allege any representative examples under the False Claims Act with the specificity required by Rule 9(b).

Relator has already had an opportunity amend. Consequently, the second amended complaint is dismissed with prejudice.[8] *See Vibe Micro*, 878 F.3d at 1295; *Garcia v. Goodwill Indus. of S. Fla., Inc.*, No. 18-cv-25042, 2019 WL 6052814, at *5 (S.D. Fla. Nov. 15, 2019).

---

[8] Relator's state-specific claims are also dismissed, as Relator does not dispute that those counts are governed by the same analysis as the FCA. *See Choudhry*, 262 F. Supp. 3d at 1311.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1.  Defendant "Publix Super Markets, Inc.'s Motion to Dismiss and Incorporated Memorandum of Law" (Doc. 124) is hereby **GRANTED**.

2.  This case is **DISMISSED WITH PREJUDICE.**

3.  The Clerk is directed to terminate any pending motions and deadlines, and thereafter close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 27th day of August, 2025.

 

 

TOM BARBER
UNITED STATES DISTRICT JUDGE